Mr. Wilson, you ready? Okay. We'll be glad to hear from you. Good morning, Your Honors. My name is Jason Wilson, and I represent Brenda Finney in this appeal. We are seeking a remand under Sentence 6 of 42 U.S.C. Section 405G for consideration of new medical evidence that we submitted to the District Court. This case involves two different ALJ decisions with different findings on whether my client is disabled. The first decision, which is the subject of this appeal, was issued on December 14, 2010, and it found that my client was not disabled because she was capable of performing medium work. But we now have a new ALJ decision finding that my client, the very next day after the date of the first decision, is disabled because she is restricted to performing a limited range of only light work. So we have two completely different ALJ decisions with two completely different residual functional capacity assessments. The Acting Commissioner has attempted to minimize the impact or the importance of this new ALJ decision to this appeal. But as we pointed out in our response to the Acting Commissioner's Notice of Supplemental Authority last week, this Court, in its past decision in the Lively case, found that the doctrine of res judicata applies to final decisions in Social Security disability cases and applies to the findings that are made in those decisions. And that is what we have here in the second ALJ decision that we also submitted to the District Court. We have a new final decision from an ALJ that was unchallenged that finds that my client is disabled because of a different residual functional capacity. So under the Court's decision in Lively, res judicata applies to the findings in that decision,  and some of those findings by the second ALJ are directly relevant to the issues in this appeal. For example, the overall issue here today is whether the new medical evidence that we submitted to the District Court creates a reasonable possibility of a change in the findings of the first ALJ. And the Acting Commissioner has argued in her briefs that there is no possibility of such a change, but that is contradicted by the findings of the second ALJ. At the beginning of the second ALJ's decision, she addressed the residual functional capacity assessment of the first ALJ, and she expressly found that the new medical evidence supports a finding of a more restrictive residual functional capacity. So the new ALJ has certainly found that the new evidence is material. That's a finding that under res judicata is binding on the Acting Commissioner, and it precludes her from arguing that this evidence is not material. We also have to establish that the medical evidence we submitted is new, and that it provided something that was missing from the limited medical evidence that was available to the first ALJ. And there is case law from this Court establishing that if new evidence provides information that an ALJ found to be missing from the previous record, then the new evidence is new for purposes of Senate 6. But didn't she have a new onset of pain around the 1st of September, 2011? Well, Your Honor, when she first saw the treating orthopedic specialist, Dr. Mortensen, he recorded a statement to that effect. I think he characterized it as an onset of pain localized to the medial joint line of the right knee, and I think it was two weeks earlier, if I recall. When it started. Right, when she apparently reported that it started. But there's a consultative examination as part of this new evidence that we submitted that dates back to April of 2011, which would have been five months earlier. Still outside the period that the first ALJ considered. Still outside of that period, Your Honor. But that physician, Dr. Guarino, in his examination noted that there was pain along the medial joint line of the right knee. So there's some evidence there that that particular problem didn't start two weeks before my client first saw Dr. Mortensen. But going back to the issue of whether this is new evidence, the first ALJ noted in her decision that part of the reason she was discounting the effect of the right knee impairment on residual functional capacity is because the available medical records at the time did not contain an MRI report for the right knee, and it did not contain a record of more extensive medical treatment than the conservative treatment she initially received from Dr. Daniel, the primary care doctor. Well, our new medical evidence provides the very things that the first ALJ said was missing. There is certainly an MRI report. There is a record that establishes that she did require more extensive treatment of her right knee injury, and that included pain medications, pain injections to the right knee, and ultimately surgery. So the new evidence does provide a significant amount of information that the first ALJ found to be missing from the initial medical records. Why did you delay getting that MRI? She had no health insurance, Your Honor. Couldn't afford it? She could not afford it. That is referenced in the primary. How did she come to afford it? I don't know how she obtained the funds to afford it later, Your Honor, all that I know. It had been recommended, what, two years before? It had been recommended, Your Honor. Two years before that, or how long before? Dr. Daniel, the primary care doctor, I believe in 2008 initially, recommended an MRI, which would be necessary for him to figure out if there was a torn cartilage in the knee. That's a soft tissue injury that doesn't show up on x-rays, so he needed an MRI. He recommended one, but he also noted that she had no health insurance, and that's why she was not getting the MRI right away. Another finding of the second ALJ that is relevant to the issues here today is how far back does our new medical evidence relate? Because we have to show that it relates back to at least the day of the first ALJ's decision or sometime prior to that. And the acting commissioner has argued in her briefs that it doesn't relate back. It's only relevant to the year 2011 when that evidence came into being. But, again, that's contradicted by the finding of the second ALJ. Because the second ALJ found that disability goes back to the day after the date of the first ALJ decision, so December 15 of 2010. By finding that my client was disabled on that date, she's implicitly finding that this evidence is relevant as early as at least that particular date, the day after. Res judicata applies to that finding as well. The acting commissioner is bound to that finding. She can't dispute it. She can't argue that it's only relevant to some date after that. So now we're left with a situation where we have a finding of a more restrictive residual functional capacity on December 15 of 2010. That's a final decision finding on the acting commissioner. We have this previous decision that finds only one day earlier my client had a much greater residual functional capacity. But there's absolutely nothing in the medical evidence to explain that. Because nothing happened on December 14 or December 15 of 2010 to explain why on one day she could do medium work, but on the next day she all of a sudden could only do a limited range of light work. There's just nothing in the evidence to explain such a change. And the lively court describes situations like that as inconceivable, because there's nothing in the evidence to explain such a change. And it certainly weighs heavily in favor of this court finding that the, because it's well established that the evidence goes back to at least the day after the date of the first decision, that mitigates in favor of the court finding that it probably is relevant to the day of the decision and earlier because there's no explanation for the change in the residual functional capacity. How does race judicata help you here? It binds the acting commissioner, Judge Davis, to the finding of the second ALJ, that this evidence is relevant going back to as early as the day after the date of the first decision. How can that affect the first decision? Well, I think it doesn't require a finding. Then it's not race judicata. Well, it simply prevents the argument that the acting commissioner has made that this evidence is only relevant to 2011 and after. And that's the argument that the acting commissioner has made. Okay, so it's not, again, I don't mean to put words in your mouth, but you're not making a race judicata argument. You're making a persuasive evidence type of argument.  I'm not suggesting that race judicata requires that finding that it goes back to before the date of the decision, but I think it helps us to make a persuasive argument to the court, again, because we have those two different residual functional capacities on back-to-back days, and there's nothing to explain it in the evidence. And I suppose if we were sitting in equity, your argument would have even greater power. We're sitting on the law side in this case, aren't we? That's correct, Your Honor. But the ultimate issue here is what would an ALJ do, what might an ALJ do, if this case is sent back for a remand? If this new evidence is put before another ALJ, what kind of conclusions might they draw from the evidence? So that's what I think this argument goes to. That's what the court has to decide when it's deciding whether there should be a remand under Senate 6 of 405G. And the last point, Your Honor, is whether or not we had good cause for not submitting that evidence earlier than we did. We could not have submitted it to the Appeals Council or the first ALJ because the evidence didn't exist at the time. The new medical treatment evidence didn't come into existence until this appeal was already pending before the district court. So obviously we could not have submitted it. There's case law from this court recognizing that if the evidence didn't exist, then the claimant does not have the duty to submit it earlier. And if there are no other questions from the court, I will reserve the balance of my time, Your Honor. Thank you. Ms. Lawrence. Thank you. May it please the Court, my name is Candace Lawrence and I represent the Commissioner. We believe that this case comes down to really one huge question. Does this new evidence justify a sentence 6 remand? It's not really about one decision versus the first decision versus the second decision. It really all comes down to the evidence. Would the evidence that was submitted to the district court for the first time, never seen by the ALJ, never seen by the Commissioner, would it have changed the ALJ's first decision had it been before him at the time? We believe it would not. And I'm going to focus mainly on the materiality prong. There are three prongs that the claimant must meet, and it's her burden to meet them. She must prove that the evidence is new. She must prove that it's material. And she must prove that there was good cause for not producing it during the prior proceeding. Your position is it's not material? My position is that it does not meet any of the prongs, but I'm going to focus. We believe that the most salient prong here is the materiality prong, and I'd like to focus on that, and if this Court has any other questions, I can address them. You're focusing on materiality and not waiving anything else, but you think that's your best argument? That's probably the best argument. That's the easiest argument to make. That's your easiest argument. It's the clearest cut argument, and it may go either way on some of the other ones, but the materiality, we believe it's absolutely clear, and since the claimant has to prove all three to prevail, we believe it makes more sense to argue materiality. But I'm absolutely happy to address everything else. For three main reasons, this new evidence is not material. The first, the most obvious, is that absolutely none of the new evidence that was produced for the district court is dated during the period that relates prior to the first ALJ's decision. None of them stated that way. They're all dated afterward. Second, they don't even purport to relate to what her condition was during that prior time. Which is more important than the date. Which is more important than the date, because absolutely something can be produced later, and the doctor can give an opinion saying, well, yes, it's dated later. However, based on what we're looking at, it really must have gone back about six months, and these were her limitations, in my best opinion. There was nothing like that in any of the evidence. Second, the right knee condition. This was touched upon a little bit earlier. This was a condition that preexisted during the first adjudication period, and during that time, the claimant had complained sporadically about a right knee condition. She said that it was popping when she was climbing stairs. She said that she was treating it conservatively with a leaf. Twice a day she was using ice. She was raising her right leg when it started to swell. Things like that. Her doctor at the time, Dr. Daniels, offered her an MRI to obtain some sort of diagnostic condition of what was going on. She said, I don't have insurance at this time, but when it becomes necessary, I'll get back in touch with you. I'll just note that later on when she did obtain the MRI, she still did not have insurance. So we're not exactly sure what changed in her financial condition. Something changed. Or perhaps it was just that it became so unmanageable that she needed to do something about it and simply found a way to address it. The new evidence that was produced paints a different picture. Six months after the first decision, it was in September of 2011, she began to tell a new doctor, Dr. Mortensen, that her pain was now unmanageable. Very shortly after, actually very shortly before, she obtained an MRI scan, which showed a suspicion for torn cartilage in the right knee. She had arthroscopic surgery performed the following month. This was all within about a one-month span. All these things happened. She started receiving cortisone shots, which didn't seem to help. The doctor at that time, Dr. Mortensen, offered her also physical therapy. She said, I don't have the insurance right now to afford physical therapy, and he explained in his notes that he very extensively taught her how to perform home exercises, which she performed. Now, the third reason that this new evidence isn't material is because it involves a completely new condition, and this is her left knee. It was back in June of 2012, and remember again that the first decision was December 2010, that she started complaining about a left knee condition. Like with the right knee condition, she obtained an MRI, she had arthroscopic surgery, and she was doing home exercises. The treatment notes seemed to suggest that these treatments were improving her conditions. So these are the three main reasons. There are actually probably more that I could get into, why we believe that this is not material evidence, but we believe this is absolutely more than enough to demonstrate that this new evidence is not material to the first decision and wouldn't have changed the outcome. If there are any other questions, I'm absolutely sure that this court is well acquainted with the briefs. If there are any specific questions that you would like to address at this time, I'm happy to answer. I think we understand your position. Okay. Would you like me to address the question about the day after, being found disabled the day after a subsequent adjudication? We'll leave that up to you. Okay. Thank you. Okay. Mr. Wilson. Thank you, Your Honor. I think my response to that would be this. The acting commissioner is presenting this as if there is definite evidence of some major significant change in the right knee condition after the date of the first ALJ's decision, but that's not what the evidence shows. We know when the initial injury occurred. That occurred back in 2008. That's when she started going to Dr. Daniel, and he suspected that there was a torn meniscus at that time. The only reason he couldn't confirm it is because the MRI wasn't done at that time. But nothing else, now that we have the complete medical history, the complete record of medical treatment, there's nothing that shows a subsequent injury. There was one injury that occurred in 2008. There's no change in the medical conditions shown by the records. The only thing that changes in the medical records is the type of treatment that she was getting. She didn't have health insurance initially. That's why she didn't get the MRI, and the reason she didn't see a surgeon sooner is because the primary care doctor couldn't refer her to a surgeon until he was sure of the torn meniscus. As soon as he found that out, he referred her for extensive treatment, and the treatment went on as it should have done. But there isn't anything to show that there was a change in 2011 or 2010 or 2009 or at any other point. It's all one injury. The medical records are simply an unbroken chain of record of continuous treatment for one injury that occurred way back in 2008. And if there are no further questions, I thank you for your time, Your Honors. Thank you.
judges: William B. Traxler, Jr., Robert B. King, Andre M. Davis